# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

JOANNA LEE,
    *Plaintiff*

v.

GORDON R. ENGLAND,
Secretary, Department of the Navy,
    *Defendant*

PLAINTIFF DEMANDS TRIAL BY JURY

C.A. No.: 2005 - _____

CA 05 260 S

## VERIFIED COMPLAINT

### I.

### NATURE OF THE ACTION

In this civil action, the Plaintiff, JOANNA LEE, hereby commences this cause of action for claimed damages from the Defendant, GORDON R. ENGLAND, in his official capacity as SECRETARY, DEPARTMENT OF THE NAVY, pursuant to Title VII of the Civil Rights Act of 1964, the final Agency decision from the Equal Employment Opportunity Commission, Office of Federal Operations and applicable state law governing employment relationships in accordance with the law of the State of Rhode Island.

### II.

### JURISDICTION AND VENUE

1. Plaintiff, JOANNA LEE ["Mrs. Lee"] commences this de novo cause of action for enforcement of an agreement entered into by Mrs. Lee with the Department of the Navy to resolve and settle her complaint of discrimination under Title VII of the Civil Rights Act of 1964 against the Naval War College, Newport Rhode

1



Island ["Naval War College"], a department within the Department of the Navy, under its supervision and control.

2. This honorable Court has jurisdiction over this cause of action in that Mrs. Lee has exhausted her administrative remedies pursuant to 29 C.F.R. Part 1614. and has filed this cause of action within ninety (90) days of receiving the final decision of the Office of Federal Operations [hereinafter OFO], U.S. Equal Employment Opportunity Commission [hereinafter EEOC], dated March 14, 2005.[1]

3. Venue is proper in this honorable Court, pursuant to 28 U.S.C. § 1391(a).

## III.

## PARTIES

4. Plaintiff, Mrs. Lee at all times relevant to this cause of action is a resident of the State of Rhode Island and a government service ["GS"] employee with the Department of Defense, employed by the Department of the Navy, Naval War College, Newport, Rhode Island ["Naval War College"].

5. Defendant, Gordon R. England, Secretary, Department of the Navy is the agency where Mrs. Lee is employed at the Naval War College.

## IV.

## FACTUAL ALLEGATIONS

6. Mrs. Lee was, at all times relevant hereto, a Budget Assistant, GS-7, Comptroller's Department, at the Naval War College for over eighteen (18) years. Mrs. Lee has been a productive employee with years of experience and an absence of any adverse employment action against her.

7. Ronald A. Route ["Route"], was, at all times relevant hereto, a Rear Admiral in the United States Navy ["Navy"], and the President of the Naval War College.

---

[1] The final decision by this Agency is enclosed herein as Exhibit 1.

8. Barbara E. McGann ["McGann"], was, at all times relevant hereto, a Rear Admiral in the Navy, and Provost of the Naval War College until her retirement on or about April 2002.

9. James Giblen ["Giblen"], was, at all times relevant hereto, a professor at the Naval War College, and succeeded McGann as Provost of the Naval War College upon her retirement on or about April 2002.

10. Steven Smith ["Smith"], was, at all times relevant hereto, a Commander in the Navy, billeted as Comptroller at the Naval War College, and Mrs. Lee's second line supervisor.

11. Brian Hennessey ["Hennessey"], was, at all times relevant hereto, Budget Officer at the Naval War College, and Mrs. Lee's first line supervisor.

12. Charlene Hanson ["Hanson"] was, at all times relevant hereto, Human Resources Coordinator at the Naval War College, responsible for the guidance, compliance and advice to the Command of all issues regarding personnel matters.

13. On or about early October, 2001, Mrs. Lee informed Smith that she would voluntarily transferred from the Comptroller's Department to NWDC due to the intolerable working conditions Mrs. Lee was subjected to by Hennessey. On or about October 23, 2001, Hennessey informed Mrs. Lee at a meeting with co-workers that the transferred to her new position at NWDC was imminent and, therefore, she would have to train her replacement immediately. This information was at odds with the direction she received from Smith that her transferred would come in November, 2001. Smith later confirmed that her transferred was not imminent.

14. On or about October 25, 2001, Mrs. Lee suffered a stress-induced anxiety attack at work when she learned that Hennessey had filed a complaint against her and was threatened by him that he would use her as an example, that her days working for the federal government "were numbered," and that he was going to get her, or words to that effect. Mrs. Lee was taken by ambulance to the hospital.

15. On or about October 28, 2001, Mrs. Lee filed an administrative grievance against Hennessey, pursuant to the grievance procedure set forth in the collective bargaining agreement.

16. On or about November 1, 2001, Mrs. Lee was medically prescribed up to thirty (30) days medical leave for work-related stress and anxiety that was approved by McGann.

17. Or about November 9, 2001, Mrs. Lee was informed by her co-worker, Justina Victorino, a Budget-Technician within the Comptroller's Department that Smith informed her that she would be transferring to the NWDC position. Mrs. Lee was also informed that the basis for this personnel change was Smith's belief, articulated to other third-parties, that due to Mrs. Lee's "mental problems" she would be incapable of acquiring the necessary security clearance for this position.

18. On November 14, 2001, Mrs. Lee filed an informal EEO complaint with EEO Advisor Ms. Dawn Johnson against Smith alleging that his various comments, *inter alia*, regarding her "mental state" violated her civil rights based on sexual discrimination and a hostile work environment.

19. From on or about November 15th through November 20th, 2001, Mrs. Lee met with McGann on two occasions, while on work-related stress leave, to discuss the EEO Complaint, as well as events that led to the Complaint. McGann explained the various remedies at Mrs. Lee's disposal including, but not limited to, her transfer to a new department, the College of Continuing Education [a/k/a "CDE"] that would remove her from the managerial supervision and direction of Smith and Hennessey, and would provide her with more promotional opportunities. McGann assured Mrs. Lee during these meetings that she would attempt to resolve her Complaint on a "need to know" basis so as not to jeopardize her career at the Naval War College.

20. On or about November 21, 2001, Mrs. Lee wrote to McGann, via email, to inform her that she agreed to the agreement that would resolve her EEO Complaint, the details of which were discussed during the previous meetings with McGann. McGann represented, inter alia, that the Naval War College would transfer her to a new position, that this transfer would be a temporary detail until her position description was written and the transfer and/or the Complaint would not jeopardize her career. Moreover, in response to Mrs. Lee's request that the agreement be memorialized in writing, McGann replied that only the detail would

4

be in writing so as not to alert Mrs. Lee's supervisors of the agreement. In exchange for the Naval War College's actions, Mrs. Lee agreed to withdraw her EEO Complaint.

21. On or about November 21, 2001, McGann wrote to Mrs. Lee via email requesting that she withdraw her EEO Complaint via email to expedite the process. McGann directed Ms. Charlene Bary to go to Mrs. Lee's home for her to sign the detail letter. Mrs. Lee spoke with Ms. Dawn Johnson, the EEO Advisor, regarding what had transpired. Ms. Johnson requested that Mrs. Lee send her an acknowledgment that Mrs. Lee was withdrawing her Complaint, which Mrs. Lee did. Ms. Johnson reassured Mrs. Lee that in the event the Naval War College did not honor this settlement agreement she could always "re-file" her EEO Complaint.

22. On December 3, 2001, Mrs. Lee reported, as directed, to the College of Continuing Education (a/k/a/ "CDE"], her new position, pursuant to the settlement agreement initiated by McGann and agreed to by Mrs. Lee.

23. On December 8, 2001, Mrs. Lee contacted McGann via email regarding her new position and her concerns about the security of her new position.

24. On or about April 2002, McGann retired from the Navy.

25. From on or about December, 2001, through January 2004, and currently, the Naval War College has consistently failed and/or refused to implement the settlement agreement entered into by the parties, despite numerous attempts by Mrs. Lee, to wit: delayed written position description at her new position within the CDE, exceeded detail of ninety (90) days, failure to compose personnel evaluations, misrepresentations to the Inspector General that these issues had been resolved and the refusal to consider Mrs. Lee for promotion, all to the detriment of her government service career.

26. On March 8, 2004, Mrs. Lee appealed the Naval War College's repudiation of the November 21, 2001 settlement agreement between the parties to the OFO.

27. On January 24, 2005, the OFO denied Mrs. Lee's appeal to the Naval War College's repudiation of their settlement agreement and affirmed the Naval War College's decision.

5

28. On February 23, 2005, Mrs. Lee filed her Notice of Request for Reconsideration to the OFO's decision denying the existence of a settlement agreement between the parties, pursuant to 29 C.F.R. § 1614.405.

29. On March 8, 2005, Mrs. Lee submitted a memorandum to the OFO in support of her request for reconsideration. That memorandum contained an exhibit whereby McGann represented that it was her understanding and belief that the parties had reached settlement in Mrs. Lee's EEO complaint. In support of Mrs. Lee's request, McGann wrote that she was "the Naval War College official who chose alternative dispute resolution to persuade Joanna Lee to withdraw her EEO complaint in exchange for reassignment to a new GS-7 position in CCE, a re-written PD, and an evaluation by a new supervisor. [She certifies] that it was a valid settlement agreement of an EEO claim because [she was] the official who adjudicated it. [She] gave clear instructions to senior staff to execute the agreement. If they did not, that is bad faith . . . ."[2]

30. The Naval War College first repudiated any existence of a settlement agreement between the parties in its response to Mrs. Lee's request for a final decision regarding the status of the settlement agreement on or about January, 2004.

31. On or about March 18, 2005, Mrs. Lee received notice from OFO denying her appeal to the Naval War College's repudiation of their settlement agreement and denying her request that the OFO reconsider its initial decision denying Mrs. Lee's Appeal. This was the EEOC's final decision on the matter.

## CAUSES OF ACTION

### Count I

(Breach of Settlement Agreement to Resolve EEOC Complaint)

32. Mrs. Lee hereby realleges paragraphs one (1) through thirty-one (31) and incorporates the same by reference as though fully set forth herein.

33. During November 2001, the Naval War College initiated overtures to Mrs. Lee in an attempt to resolve her discrimination complaint against the Command via

---

[2] Mrs. McGann's statement is attached herein, and incorporated as reference, as Exhibit 2.

6

alternative dispute resolution ("ADR"). Inquiries in attempting to resolve Mrs. Lee's complaint were conducted by McGann.

34. On November 21, 2001, Mrs. Lee and the Naval War College entered into a settlement agreement to resolve Mrs. Lee's discrimination Complaint filed with the EEOC. The terms of the agreement set forth a *quid pro quo* whereby if Mrs. Lee would withdraw her complaint, the Naval War College would immediately transfer from her current position and, therefore, current managerial supervisors in an attempt to protect Mrs. Lee from further discriminatory practices and/or reprisal, would review and compose a position description within one-hundred and twenty (120) days, and would ensure that Mrs. Lee suffered no prejudicial effect or reprisal from instituting her Complaint or entering into a settlement agreement with the Naval War College.

35. McGann, the Naval War College's principle agent in entering into this settlement agreement, acknowledges that such an agreement exists between the parties, and that Mrs. Lee fulfilled her responsibilities under the terms of the agreement.

36. After months of attempting to implement the terms of the agreement and being unable to, either through intent and/or neglect, the Naval War College repudiated the agreement years later. The Naval War College has breached this agreement and this non-compliance continues to date.

37. At all times material herein, the Naval War College breached the settlement agreement between the parties in that they refused to compose a position description for Mrs. Lee's position, failed to evaluate her job performance on an annual basis, and subjected Mrs. Lee to retaliation that jeopardized her career in violation of the agreement.

38. Mrs. Lee exercised her administrative rights under 29 C.F.R. § 16145.504 and brings this instant cause of action in response to the denial of the existence of a settlement agreement.

*Wherefore,* Mrs. Lee respectfully requests that this honorable Court order judgment against Defendant, including compensatory and punitive damages, costs of this action,

7

attorney's fees and costs and such other legal and equitable relief as this Court deems just and proper.

## Count II

(Violation of Title VII of the Civil Rights Act of 1964 – Reprisal)

39. Mrs. Lee hereby realleges paragraphs one (1) through thirty-eight (38) and incorporates the same by reference as though fully set forth herein.
40. At all times relevant herein, Defendant and its agents, set forth a series of events through its acts and/or omissions whereby they retaliated against Mrs. Lee for engaging in a protected activity, to include, but not limited to filing a Complaint with the EEOC.
41. At all times relevant herein, Defendant was well aware that Mrs. Lee had filed a complaint charging them with discrimination with the EEOC.
42. At all times relevant herein, Mrs. Lee has suffered from the adverse actions taken by or on behalf of Defendant by its agents including, but not limited to, the refusal to accept or entertain Mrs. Lee for promotion, present annual reviews of her job performance in a timely manner, and/or compose a job description that accurately reflects her job responsibilities.

*Wherefore*, Mrs. Lee respectfully requests that this honorable Court order judgment against Defendant, including compensatory and punitive damages, costs of this action, attorney's fees and costs and such other legal and equitable relief as this Court deems just and proper.

## Count III

(Negligent Hiring/Supervision/Retention)

43. Mrs. Lee hereby realleges paragraphs one (1) through forty-two (42) and incorporates the same by reference as though fully set forth herein.
44. In the course of its responsibilities as employer, Defendant had a duty and obligation to conduce reasonable inquiry into the acts, conduct and performance of Mrs. Lee's supervisors.
45. Subsequent to entering into a settlement agreement with Defendant, Mrs. Lee communicated on a number of occasions the fact that she was subjected to acts and omissions by her supervisors, EEOC processing advisors and members of the Naval War College Human Resources Department that constituted wrongful and unlawful acts that Defendant knew, or reasonably should have known, were being imposed upon Mrs. Lee.
46. At all times material herein, the Defendant knew, or reasonably should have known, that the conduct, acts, and/or omissions of the Defendant and its agent and employees, violated Mrs. Lee's rights under the law.
47. At all times material herein, the Defendant knew, or reasonably should have known, that the incidences, conduct, acts and/or omissions described above would and did proximately result in emotional distress to Mrs. Lee, including, but not limited to, loss of sleep, loss of work, loss of appetite and accompanying anxiety, depression and humiliation.
48. At all times material herein, the Defendant had the power, ability, authority and duty to intervene, supervise, prohibit, control, regulate, discipline and/or penalize the conduct of the Defendant's agents and employees.
49. Despite said knowledge, power and duty, the Defendant negligently failed to act so as to prevent, supervise, prohibit, control, regulate discipline and/or penalize such conduct, acts and omissions or to otherwise protect Mrs. Lee.
50. As a direct and proximate result of Defendant's failure to protect Mrs. Lee, and to adequately supervise, prohibit, control regulate, discipline and/or otherwise penalize the conduct, acts and omissions of its supervisors, agents and/or

9

employees as alleged above, said conduct, acts and omissions were perceived by them as, and in fact had the effect of, ratifying, encouraging, condoning, exacerbating, increasing and/or worsening said conduct, acts and/or omissions.

51. As a direct and proximate result of the Defendant's actions, Mrs. Lee has suffered and continues to suffer extreme and severe mental anguish and emotional distress and has and may continue to incur medical expenses for treatment by health care professionals, in addition to other incidental expenses. Mrs. Lee is therefore entitled to general and compensatory damages in amounts to be proven at trial.

*Wherefore*, Mrs. Lee respectfully requests that this honorable Court order judgment against Defendant, including compensatory and punitive damages, costs of this action, attorney's fees and costs and such other legal and equitable relief as this Court deems just and proper.

Count IV

(Intentional Infliction of Emotional Distress)

52. Mrs. Lee hereby realleges paragraphs one (1) through fifty-one (51) and incorporates the same by reference as though fully set forth herein.
53. Defendant engaged in extreme and outrageous conduct in that the Defendant, through its agents and employees, regularly and persistently tormented, isolated, verbally assailed, embarrassed, humiliated and unjustly instituted an administrative Complaint against Mrs. Lee, thereby creating a hostile work environment and, through its agents and employees, abused their managerial positions as Mrs. Lee's supervisors and/or abused their advisory positions as employee support staff, which vested them with substantial power to control Mrs. Lee's work environment, and damage his interests and well-being, all to Mrs. Lee's detriment.
54. Through the conduct described above, Defendant's agents and employees acted with the intent to cause or with the reckless disregard for the probability of causing Mrs. Lee to suffer severe emotional distress.

10

55. Defendant, through its agents and employees, confirmed and ratified the conduct described above with the knowledge that Mrs. Lee's distress would increase and did so with wanton and reckless disregard of the consequences to Mrs. Lee.
56. As a direct and proximate result of the Defendant's actions, Mrs. Lee has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Mrs. Lee has incurred and will continue to incur medical expenses for treatment by health professionals, and for other incidental expenses. Mrs. Lee, therefore, is entitled to general and compensatory damages in amounts to be proven at trial.

*Wherefore,* Mrs. Lee respectfully requests that this honorable Court order judgment against Defendant, including compensatory and punitive damages, costs of this action, attorney's fees and costs and such other legal and equitable relief as this Court deems just and proper.

Count V

(Negligent Infliction of Emotional Distress)

57. Mrs. Lee hereby realleges paragraphs one (1) through fifty-six (56) and incorporates the same by reference as though fully set forth herein.
58. Defendant engaged in negligent conduct in that the Defendant, through its agents and employees, regularly and persistently tormented, isolated and verbally assailed, embarrassed, humiliated and unjustly instituted an administrative Complaint against Mrs. Lee creating a hostile work environment and, through its agents and employees, abused their managerial positions as Mrs. Lee's supervisors and/or abused their advisory positions as employee support staff, which vested them with substantial power to control Mrs. Lee's work environment, and damage his interests and well-being, all to Mrs. Lee's detriment.

59. Through the conduct described above, Defendant's agents and employees acted with the intent to cause or with the reckless disregard for the probability of causing Mrs. Lee to suffer severe emotional distress.

60. Defendant, through its agents and employees, confirmed and ratified the conduct described above with the knowledge that Mrs. Lee's distress would increase and did so with wanton and reckless disregard of the consequences to Mrs. Lee.

61. As a direct and proximate result of the Defendant's actions, Mrs. Lee has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Mrs. Lee has incurred and will continue to incur medical expenses for treatment by health professionals, and for other incidental expenses. Mrs. Lee, therefore, is entitled to general and compensatory damages in amounts to be proven at trial.

*Wherefore,* Mrs. Lee respectfully requests that this honorable Court order judgment against Defendant, including compensatory and punitive damages, costs of this action, attorney's fees and costs and such other legal and equitable relief as this Court deems just and proper.

## Count VI

(Violation of Right to Privacy)

62. Mrs. Lee hereby realleges paragraphs one (1) through sixty-one) and incorporates the same by reference as though fully set forth herein.

63. Defendant, through its agents and employees, in violation of Rhode Island General Laws § 9-1-28.1 *et seq.* discussed private facts about the alleged nature of Mrs. Lee's mental state and qualification to be granted a security clearance with Defendant's other agents and employees during a department wide meeting.

64. The alleged facts regarding Mrs. Lee's mental status is not a legitimate concern to the public and it is highly objectionable and offensive to have made them public.

65. Defendant, through its agents and employees, in violation of Rhode Island General Laws § 9-1-28.1 *et seq.* published false and fictitious facts which

12

explicitly stated and/or implied that Mrs. Lee's mental status was compromised that is without a basis in fact.

66. Defendant's published statements through its agents and employees attributable to Mrs. Lee's mental status and fitness for a security clearance placed her in a false light and was highly objectionable and offensive.
67. Defendant, through its agents and employees, had knowledge of or acted in reckless disregard as to the truth or falsity of the publicized comments concerning Mrs. Lee and knew or should have known of the false light that said comments placed Mrs. Lee.
68. As a direct and proximate result of the Defendant's actions, Mrs. Lee has suffered and will continue to suffer a loss of esteem, extreme and severe mental anguish and emotional distress. She has, and may continue to, incur medical expenses for treatment by health care professionals, in addition to other incidental expenses. Mrs. Lee, therefore, is entitled to general and compensatory damages in amounts to be proven at trial.

*Wherefore,* Mrs. Lee respectfully requests that this honorable Court order judgment against Defendant, including compensatory and punitive damages, costs of this action, attorney's fees and costs and such other legal and equitable relief as this Court deems just and proper.

## Count VII

### (Defamation)

69. Mrs. Lee hereby realleges paragraphs one (1) through sixty-eight (68) and incorporates the same by reference as though fully set forth herein.
70. That upon information and belief, the Defendant's agents and employees did from November 2001 onward, engage in willful, reckless and malicious statements regarding Mrs. Lee's mental status, fitness for a security clearance and veracity of statements set forth in her complaints involving the Defendant.

13

71. The aforementioned willful, reckless and malicious statements are without a basis in fact and are slanderous.

72. The aforementioned willful, reckless and malicious statements were orally communicated by the Defendant, its agents and employees, to third parties are false.

73. The aforementioned willful, reckless and malicious statements orally communicated and published by the Defendants, its agents and employees, to third parties was not a privileged publication.

74. As a direct and proximate result of the Defendant's actions, Mrs. Lee has suffered and will continue to suffer a loss of esteem, extreme and severe mental anguish and emotional distress. She has, and may continue to, incur medical expenses for treatment by health care professionals, in addition to other incidental expenses. Mrs. Lee, therefore, is entitled to general and compensatory damages in amounts to be proven at trial.

*Wherefore,* Mrs. Lee respectfully requests that this honorable Court order judgment against Defendant, including compensatory and punitive damages, costs of this action, attorney's fees and costs and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

*Wherefore*, Mrs. Lee demands judgment against Defendant, general and compensatory damages, punitive damages, reasonable attorney's fees and costs, pre-judgment interest on all damages recovered were applicable, plus costs and expenses to prosecute this cause of action.

                                      Respectfully submitted,
                                      JOANNA LEE,
                                      By her Attorney,

                                      THE COATY LAW OFFICES

                                      _____
                                      Steven John Coaty, Esq. (5719)
                                      P.O. Box 1293
                                      Newport, RI 02840
Dated: 14 June 2005                    Tel: 401.848.7227

## VERIFICATION

I, the undersigned, on oath depose and state that I am the Plaintiff in this action, and having read the foregoing Verified Complaint do hereby swear to the truth of all the allegations contained therein, except as to those allegations which are stated to be upon information and belief, which allegations I believe to be true.

*[signature]*
JOANNA LEE

Subscribed and sworn to before me at Newport, Rhode Island, this 14th day of June, 2005.

*[signature]*
Notary Public:
Name: J. Russell Jackson
My commission expires: 9/1/08